**PRIORITY SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   EDCV 13-02032-VAP (SPx)                    Date:  January 29, 2014

Title:      BRUCE MCMAHON, ON BEHALF OF HIMSELF; CHRISTOPHER
            BENGSTSON, ON BEHALF OF HIMSELF; AND ALL OTHERS
            SIMILARLY SITUATED -*v*- TAKE-TWO INTERACTIVE SOFTWARE,
            INC; AND TAKE-TWO INTERACTIVE SOFTWARE, INC., DBA
            "ROCKSTAR"; AND DOES 1 THROUGH 100, INCLUSIVE
===============================================================
PRESENT:       HONORABLE VIRGINIA A. PHILLIPS, U.S. DISTRICT JUDGE

            Marva Dillard                         None Present
            Courtroom Deputy                      Court Reporter

ATTORNEYS PRESENT FOR                 ATTORNEYS PRESENT FOR
PLAINTIFFS:                           DEFENDANTS:

            None                                  None

PROCEEDINGS:      MINUTE ORDER GRANTING DEFENDANTS' MOTION TO
                  DISMISS (DOC. NO. 8) WITH PREJUDICE (IN CHAMBERS)


        Before the Court is the Motion to Dismiss Plaintiffs' Complaint (Doc. No. 8)
("Motion"), filed by Defendants Take-Two Interactive Software, Inc., and Rockstar
Games, Inc. (collectively, "Defendants") on November 12, 2013.  On January 6,
2014, Plaintiffs Bruce McMahon and Christopher Bengtson (collectively, "Plaintiffs")
filed an Opposition to the MTD (Doc. No. 15) ("Opposition").  Defendants filed a
Reply to the Opposition (Doc. No. 16) ("Reply") on January 16, 2014.  After

MINUTES FORM 11                                 Initials of Deputy Clerk vp for MD
CIVIL -- GEN                        Page 1

EDCV 13-02032-VAP (SPx)
BRUCE MCMAHON et al. v. TAKE-TWO INTERACTIVE SOFTWARE, INC, et al.
MINUTE ORDER of January 29, 2014

considering the papers submitted in support of, and in opposition to, the Motion, as well as the arguments advanced by the parties at the January 27, 2014 hearing, the Court GRANTS the Motion WITH PREJUDICE as set forth below.

# I. BACKGROUND

On May 22, 2013, Plaintiffs filed a Complaint, on behalf of themselves individually and all others similarly situated, against Defendants in the Superior Court, County of Riverside, which Defendants removed to this Court on November 6, 2013. (See Not. of Removal (Doc. No. 1); id. Ex. A ("Complaint").) In the Complaint, Plaintiffs claim Defendants engaged in fraudulent, unlawful, and unfair business practices, in violation of California Business and Professions Code § 17200 ("UCL"), and in false advertising, in violation of California Business and Professions Code § 17500 ("FAL"), when Defendants advertised their Grand Theft Auto V ("GTAV" or "GTA V") videogame as including an online multiplayer component ("GTA Online") and began selling GTAV on September 17, 2013, without making GTA Online available until October 1, 2013. (Compl. ¶¶ 24-63.)

On November 12, 2013, Defendants filed the Motion, with a Request for Judicial Notice (Doc. No. 9) ("RJN") and the Declaration of Michael C. Lynch, with seventeen exhibits (Doc. No. 10) ("Lynch Decl."). On January 6, 2014, Plaintiffs filed the Opposition, and Defendants filed the Reply on January 13, 2014.

# II. REQUEST FOR JUDICIAL NOTICE

Defendants request that the Court take judicial notice of the following documents:

(1) Game packaging for the Microsoft Xbox 360 and Sony PlayStation 3 versions of GTAV (Lynch Decl. Exs. A, B);

(2) July 2, 2013 Rockstar Newswire ("Newswire") announcement, "Asked & Answered: GTAV" (Lynch Decl. Ex. C);

(3) August 12, 2013 Newswire announcement, "Grand Theft Auto Online Gameplay Video & Previews Coming This Thursday at 10 AM Eastern" (Lynch Decl. Ex. D);

(4) August 15, 2013 Newswire announcement, "Watch the GTA Online Official Gameplay Video" (Lynch Decl. Ex. E);

EDCV 13-02032-VAP (SPx)
BRUCE MCMAHON et al. v. TAKE-TWO INTERACTIVE SOFTWARE, INC, et al.
MINUTE ORDER of January 29, 2014

    (5)    September 30, 2013 Newswire announcement, "GTA Online Details: Game Day Access Info and More" (Lynch Decl. Ex. F);

    (6)    October 1, 2013 Newswire announcement, "GTAV Title Update Details" (Lynch Decl. Ex. G); and

    (7)    Ten newspaper and blog articles from USA Today, Chronicle Herald, Examiner, www.computerandvideogames. com, www.gamespot.com, www.vg247.com, www.reviews.cnet. com, www.ign.com, www.joystiq.com, and the Las Vegas Guardian Express – all reporting on the launch of GTAV and GTA Online (Lynch Decl. Exs. H-Q).

    Federal Rule of Evidence 201 provides that a court may take judicial notice of a fact "not subject to reasonable dispute" that is "generally known within the territorial jurisdiction of the trial court." Fed. R. Evid. 201(b)(1). A document not attached to a complaint may be considered on a motion to dismiss and "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). "Specifically, courts may take into account 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1160 (9th Cir. 2012). A court "may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." Id. A court may take judicial notice of documents even where a plaintiff claims not to have reviewed the actual document so long as a document is authentic and forms the basis of a plaintiff's claims. Id.

    When a complaint alleges UCL and FAL claims, a court may take judicial notice of and consider "advertising," including product labeling and promotional announcements, even where those materials are not attached to a complaint, because those documents are central to the UCL and FAL claims. See, e.g., Davis, 691 F.3d at 1160 ("[H]aving based his allegations on the contents and appearance of the Important Terms & Disclosure Statement, '[Davis] can hardly complain when [defendants] refer to the same information in their defense.'"); In re Sony Gaming Networks & Customer Data Sec. Breach Litig., 903 F. Supp. 2d 942, 970 (S.D. Cal. 2012) ("[T]he SNE User Agreement, SNE Privacy Policy, . . . and CNET Article are all appropriate for judicial notice as Plaintiffs rely on and quote from each of the

EDCV 13-02032-VAP (SPx)
BRUCE MCMAHON et al. v. TAKE-TWO INTERACTIVE SOFTWARE, INC, et al.
MINUTE ORDER of January 29, 2014

documents in the Consolidated Complaint"); Wofford v. Apple, Inc., No. 11-CV-0034,
2011 WL 5445054, at *3 (S.D. Cal. Nov. 9, 2011) (taking judicial notice of Apple
iPhone license agreement).

    Also, a court may take judicial notice of publicly available newspaper and
magazine articles and web pages that "indicate what was in the public realm at the
time, not whether the contents of those articles were in fact true." Von Saher v.
Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010).
Courts have found website and newspaper articles to be a proper subject for judicial
notice where those materials are relied on by a plaintiff or concern facts at issue in a
complaint. See, e.g., Wible v. Aetna Life Ins. Co., 375 F. Supp. 2d 956, 965-66
(C.D. Cal. 2005) (judicial notice of Amazon.com pages and web information from
medical associations); Datel Holdings Ltd. v. Microsoft Corp., 712 F. Supp. 2d 974,
983-85 (N.D. Cal. 2010) (taking judicial notice of videogame screen shots and
materials from defendant Microsoft's website); In re Sony, 903 F. Supp. 2d at 955
(taking judicial notice of a publicly available "CNET article by author Erica Ogg,
entitled, 'Sony to Restore PSN Services'").

    Here, the Complaint quotes extensively from the GTAV packaging, and the
exact wording of certain sentences on the packaging and its meaning are central to
the claims asserted in the Complaint. (See Compl. ¶¶ 16, 26, 33.)  Nor do Plaintiffs
object to the RJN insofar as it seeks notice of the packaging. (Opp'n at 19.)  Thus,
the Court finds it appropriate to take judicial notice of the original GTAV packaging
(Lynch Decl. Exs. A, B), which both parties rely on and the Court may examine in
determining whether the Complaint states UCL and FAL claims. See Swartz v.
KPMG, 476 F.3d 756 (9th Cir. 2007).

    As for Exhibits C through Q of the Lynch Declaration, containing Rockstar
Newswire announcements from Defendants' website as well as various internet
outlets reporting on the Newswire announcements and the arrival of GTAV and GTA
Online, Plaintiffs object to judicial notice of these documents because, as Plaintiffs
assert relying on the California Evidence Code, that the documents constitute
"hearsay" and "are not capable of immediate and accurate determination by any
known reliable sources." (Opp'n at 19-20.)  Plaintiffs also object to judicial notice of
the documents because the Court "has not been provided with sufficient information

EDCV 13-02032-VAP (SPx)
BRUCE MCMAHON et al. v. TAKE-TWO INTERACTIVE SOFTWARE, INC, et al.
MINUTE ORDER of January 29, 2014

by the Defendants to determine whether or not the facts and propositions" within the documents are admissible.  (Id. at 20.)  At the January 27, 2014 hearing on the Motion, Plaintiffs' counsel reiterated these arguments, asserting that these documents are inherently unreliable.  Plaintiffs' argument, however, is flawed insofar as it relies on the California Evidence Code, rather than on the Federal Rules of Evidence, and on the apparent misapprehension of the purpose of judicial notice – that judicial notice necessarily denotes either the truth or factual reliability of a document.  See  Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938); Wyatt v. Terhune, 315 F.3d 1108, 1114 (9th Cir. 2003).  Judicial notice may be taken of the existence of certain records, not of the truth, reliability, or admissibility of their contents.  See Wyatt, 315 F.3d at 1114.  Nonetheless, as the Court finds resolution of the Motion does not turn on the existence or content of the documents included in Exhibits C through Q, the Court declines to take judicial notice of these documents.

Accordingly, the Court GRANTS judicial notice of Exhibits A and B of the Lynch Declaration and DENIES the RJN as to Exhibits C through Q of the Lynch Declaration.

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.   Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." (quoting Fed. R. Civ. P. 8(a)(2))); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

EDCV 13-02032-VAP (SPx)
BRUCE MCMAHON et al. v. TAKE-TWO INTERACTIVE SOFTWARE, INC, et al.
MINUTE ORDER of January 29, 2014

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  The Ninth Circuit clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988).

## IV.  DISCUSSION

In the Motion, Defendants assert Plaintiffs' UCL and FAL claims should be dismissed because (1) Plaintiffs do not have standing to bring their claims under the UCL and the FAL; (2) Plaintiffs fail to plead a viable claim of damages under the UCL and the FAL; (3) Plaintiffs cannot allege a "fraudulent" UCL claim; (4) the "unlawful" UCL claim is defective; (5) the "unfair" claim fails as a matter of law; and (6) Plaintiffs' FAL claim, which is identical to the "fraudulent" UCL claim, cannot stand.  (Mot. at 6-15.)

EDCV 13-02032-VAP (SPx)
BRUCE MCMAHON et al. v. TAKE-TWO INTERACTIVE SOFTWARE, INC, et al.
MINUTE ORDER of January 29, 2014

## A.    Standing

Defendants argue Plaintiffs do not have standing to assert a UCL or a FAL claim because Plaintiffs have not suffered an economic injury, such as loss of money or property, but merely a temporary "loss of use of a free videogame feature for two weeks."  (Reply at 4; Mot. at 7-8.)  Plaintiffs argue they have standing because "Defendants made fraudulent statements that GTA V was immediately available for on line play and Plaintiffs relied on these fraudulent statements at the time of the purchase."  (Opp'n at 15.)  Plaintiffs add they "would not have purchased the game at that time if they had known that on line interactive play was not available."  (Id.)

To show standing to assert a UCL or a FAL claim, a plaintiff must: "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim."  Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 322 (2011).  "A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary," to satisfy the economy injury requirement.  Id. at 323 (citing Hall v. Time Inc., 158 Cal. App. 4th 847, 854-855 (2008)).  Thus, as the California Supreme Court held in Kwikset, "[a] consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of [UCL] by alleging . . . that he or she would not have bought the product but for the misrepresentation."  Id. at 330.

Accepting all material allegations in the Complaint as true and construing them in the light most favorable to Plaintiffs (see Doe, 419 F.3d at 1062), the Court finds Plaintiffs have alleged sufficient facts in the Complaint to establish standing for their UCL and FAL claims.  Plaintiffs allege they "purchased GTA V on September 17, 2013," relying on "advertisements and guarantees made on the product regarding 'on-line' interaction"; that they "would not have purchased the GTA V videogame . . . at a premium price had [they] been informed that the 'on-line' interactive component

EDCV 13-02032-VAP (SPx)
BRUCE MCMAHON et al. v. TAKE-TWO INTERACTIVE SOFTWARE, INC, et al.
MINUTE ORDER of January 29, 2014

of the game was not available"; and that they have "suffered injury in fact and [have] lost money or property," as they were "induced to pay a premium price for a videogame that did not perform as represented." (Compl. ¶¶ 34, 38, 62.) Although Defendants characterize Plaintiffs' injury as "loss of use," which the court in In re Sony did not consider to be an economic injury, the Court finds Plaintiffs have adequately alleged an economic injury, having  "surrender[ed] in a transaction more, or acquire[d] in a transaction less, than [they] otherwise would have," which the Kwikset court found sufficient to establish an economic injury.  See In re Sony, 903 F. Supp. 2d at 966; Kwikset, 51 Cal. 4th at 330.  Plaintiffs thus have standing to assert their UCL and FAL claims, as they allege they relied on the product advertisement and label containing a misrepresentation and that they "would not have bought the product but for the misrepresentation."  (See Compl. ¶¶ 34, 38, 62.) See also Kwikset, 51 Cal. 4th at 330.  Accordingly, the Motion fails insofar as it is based on lack of standing.

## B.    Remedies Sought

Defendants argue the Complaint fails because "it does not plead a viable claim for injunctive relief or restitution." (Mot. at 8.)  Noting that "[r]emedies under the UCL and FAL are limited to injunctive relief and/or restitution" (id.; Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1150 (2003)), Defendants assert the Complaint should be dismissed because (1) "Plaintiffs' request for injunctive relief is moot," since GTA Online was already available to Plaintiffs when they filed the Complaint on October 3, 2013, and (2) Plaintiffs' request for an order requiring Defendants to refund Plaintiffs "monies paid for the defective and inactive 'on-line' play of the videogame . . . in addition to compensation for the time consumer's reasonable expectations were violated" (Compl. at 13), is in fact an impermissible request for expectation damages, since "Plaintiffs have received, retained, and used the items for which they bargained and only allege a temporary loss of use of a single, free feature – GTA Online – of the multi-faceted GTAV."  (Mot. at 8-10.)  In response, Plaintiffs concede that their request for injunctive relief "is no longer necessary," but assert that their claim for restitution is valid because Defendants profited by misrepresenting that GTA Online was available simultaneously with GTAV.  (Opp'n at 16.)

EDCV 13-02032-VAP (SPx)
BRUCE MCMAHON et al. v. TAKE-TWO INTERACTIVE SOFTWARE, INC, et al.
MINUTE ORDER of January 29, 2014

An order for restitution under the UCL or the FAL is one "compelling a UCL [or a FAL] defendant [who profited through an unfair practice or false advertising] to return money . . . to those persons in interest from whom the property was taken . . . ." Korea Supply, 29 Cal. 4th at 1144-45. "[T]he remedy requires a corresponding benefit to the defendant." In re Sony, 903 F. Supp. 2d at 970 (citing Trew v. Volvo Cars of N. Am., No. CIV-S-05-1379, 2006 WL 306904, at *2 (E.D. Cal. Feb. 8, 2006) (finding restitution appropriate even where defendant did not receive money directly from plaintiff if defendant otherwise profited from an unfair business practice)).  Loss of use or value, however, is "not recoverable as restitution because they provide no corresponding gain to a defendant." Id. (citing Wofford v. Apple, Inc., No. 11-cv-0034-AJB (NLS), 2011 WL 5445054, at *3 (S.D. Cal. Nov. 9, 2011)); see also Germain v. J.C. Penney Co., No. CV 09-2847 CAS (FMOx), 2009 WL 1971336, at *6 (C.D. Cal. July 6, 2009) (dismissing UCL claims for failing to allege recoverable damages because where plaintiffs have purchased and used the merchandise they have not "lost money or property" and instead "are essentially seeking damages").

Here, the Court finds – and the parties agree – that Plaintiffs' request for injunctive relief is moot.  The Court further finds Plaintiffs' request for "compensation for the time" (Compl. at 13), during which their expectation of playing GTA Online was violated, is a request for expectation damages – not restitution – lacking a corresponding gain to Defendants. See In re Sony, 903 F. Supp. 2d at 970. Plaintiffs' refund request for "monies paid for the defective and inactive 'on-line' play of the videogame" (Compl. at 13), however, qualifies as restitution – not damages – because Plaintiffs' central claim is that they were induced to purchase GTAV based on Defendants' misrepresentation that GTA Online would be available from the first day GTAV was released to the public, and that Defendants profited from this unfair business practice. See Korea Supply, 29 Cal. 4th at 1144-45; Wofford, 2011 WL 5445054 at *3.  Defendants continue to characterize Plaintiffs' claim as temporary loss of use of GTA Online, which is not recoverable as restitution.  (Reply at 6.)  As discussed above, however, the Court finds Plaintiffs have sufficiently alleged a fraudulent inducement claim, and the Court may compel Defendants to return, as restitution, profits they gained by fraudulently inducing Plaintiffs to buy GTAV without immediate access to GTA Online.  Thus, while the Motion succeeds as to the mootness of injunctive relief and the impropriety of awarding "compensation for the time" of GTA Online's unavailability, the Motion fails to the issue of restitution.

EDCV 13-02032-VAP (SPx)
BRUCE MCMAHON et al. v. TAKE-TWO INTERACTIVE SOFTWARE, INC, et al.
MINUTE ORDER of January 29, 2014

## C.    UCL Claim: "Fraudulent," "Unlawful," and "Unfair" Prongs

The UCL defines unfair competition as "any unlawful, unfair or fraudulent business act or practice . . . ."  Cal. Bus. & Profs. Code § 17200.  Therefore, under the UCL, "there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent."  Daugherty v. Am. Honda Motor Co., 144 Cal. App. 4th 824, 837 (2006).  In the Motion, Defendants assert Plaintiffs cannot properly allege any of the three prongs of the UCL claim.

### (1)    "Fraudulent" Prong

To assert a "fraudulent" UCL claim, Plaintiffs must establish that (1) "members of the public are likely to be 'deceived'" by Defendants' statements (Kasky v. Nike, Inc., 27 Cal. 4th 939, 951 (2002)); and (2) Plaintiffs actually relied upon Defendants' statements (see In re Tobacco II Cases, 46 Cal. 4th 298, 326 (2009)).  The likely-to-be-deceived requirement can be met when "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" by Defendants' statements.  Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496, 508 (2003).  The actual reliance requirement is established by showing that Defendants' alleged misrepresentation was "'an immediate cause' of [Plaintiffs'] injury-producing conduct."  In re Tobacco Cases, 46 Cal. 4th at 326 (quoting Mirkin v. Wasserman, 5 Cal. 4th 1082, 1110-11 (1993) (Kennard, J., concurring in part and dissenting in part).).  "Immediate cause" can be established by showing, inter alia, that, without Defendants' misrepresentation, Plaintiffs "'in all reasonable probability' would not have engaged in the injury-producing conduct."  Id. (quoting Mirkin, 5 Cal. 4th 1110-11).  If Plaintiffs' conduct in relying upon an alleged misrepresentation "in the light of [their] own intelligence and information was manifestly unreasonable," "recovery shall be denied . . . ."  Davis, 691 F.3d at 1163.

Defendants argue Plaintiffs cannot show that the public was likely to be deceived by their statements because (1) "[p]rior to the release of GTAV, Defendants made public announcements, widely reported in the popular media, that . . . GTA Online . . . would launch on October 1, 2013" (Mot. at 11 (citing Lynch Decl. Exs. H-P); (2) "the packaging of GTAV (in placement that can easily be viewed by consumers prior to purchase) explicitly states that 'access to special features . . . may not be available to all users'" (id. (quoting Lynch Decl. Exs. A, B)); and (3)

EDCV 13-02032-VAP (SPx)
BRUCE MCMAHON et al. v. TAKE-TWO INTERACTIVE SOFTWARE, INC, et al.
MINUTE ORDER of January 29, 2014

Plaintiffs do not identify any specific statement on GTAV's packaging that is false or misleading (Reply at 7-8).[1]  Defendants further argue Plaintiffs cannot establish actual reliance because (1) "Plaintiffs cannot show that Defendants made any misrepresentation or omissions, much less a material one" (Mot. at 13); (2) "Plaintiffs have alleged no facts to support their allegation that they would have proceeded differently had they been aware that GTA Online was not available until October 1, 2013" (id.); and (3) Plaintiffs have not alleged that "they made any attempt to return GTAV or contact customer support once they allegedly learned that GTA Online was

_____

[1]      In the Opposition, Plaintiffs also assert GTAV and GTA Online are only playable on PlayStation 3 and Xbox 360 consoles, and not on the new and upgraded Xbox One and PlayStation 4 consoles, which first became available to the public on November 15, 2013 and November 22, 2013, respectively.  (Opp'n at 3, 4.)  Plaintiffs contend that in June 2013 or earlier, Defendants learned of the November 2013 release of the newer consoles, concluded that the profitability of GTA Online "would be severely diminished the closer that the game was released to the impending releases" of Xbox One and PlayStation 4, "conspired to intentionally push up" GTAV's release date to September 17, 2013 – although GTA Online would not be ready until October 1, 2013 – and sold GTAV to customers, starting on September 17, 2013, by "prominently indicating on the packaging that [GTA Online] would be immediately available for play on [Xbox 360 and PlayStation 3], upon purchase of the game . . . ."  (Id. at 4.)

These allegations, which are asserted for the first time in the Opposition, are not appropriate for consideration in the context of this Motion, as they go beyond the face of the Complaint.  Even if the Court were to consider them,  the substance of these allegations is speculative and without any factual support.  Moreover, even if it is true that Defendants "conspired," in light of the imminent release of the new consoles, to maximize profit by releasing GTAV earlier than GTA Online, the truth of this allegation does not necessarily support Plaintiff's claim that the GTAV packaging was fraudulent, unlawful, and unfair.

EDCV 13-02032-VAP (SPx)
BRUCE MCMAHON et al. v. TAKE-TWO INTERACTIVE SOFTWARE, INC, et al.
MINUTE ORDER of January 29, 2014

not scheduled to launch until October 1, 2013" (id. at 12 (citing Compl. ¶ 7; Noll v. eBay Inc., 5:11-CV-04585-EJD, 2013 WL 2384250, at *4 (N.D. Cal. May 30, 2013)).

In the Opposition, Plaintiffs assert "the packaging of [GTAV]," which is "the place the consumer would and should look to find the guarantees and representations of the product they are about to purchase," indicated that "without reservation . . . on line game play was immediately available." (Opp'n at 16, 17.) Plaintiffs argue this statement on GTAV's packaging was "false," "fradulent," and as such "likely to deceive the consumer." (Id. at 16.) Further, Plaintiffs assert they "relied on the statement when making the purchase of the game and have also alleged [in the Complaint] that they would not have purchased the game had they known that Defendants' statements regarding immediate on line play were in fact false." (Id. at 16-17.) Plaintiffs argue that they did not see "any press coverage either before or after their purchase" of GTAV, and that press coverage of GTA Online's release on October 1, 2013 does not "shield [Defendants] from liability." (Id. at 17.)

The Court agrees with Plaintiffs that "press coverage" regarding a later GTA Online release date does not protect Defendants from liability. The Court's analysis of the "fraudulent" UCL claim does not hinge on whether news and social media coverage gave sufficient notice of the different release dates to potential customers, such that reasonable customers – particularly Plaintiffs, "whose primary form of entertainment is online videogaming" and who "invest[] a significant portion of their personal leisure time and their income into their passion for online videogaming" (Opp'n at 3) – would not have been deceived or misled by the packaging. Rather, the Court focuses its attention on whether Defendants made a fraudulent statement on the GTAV packaging itself and whether Plaintiffs actually relied on that statement in purchasing GTAV. Indeed, Plaintiffs allege in the Complaint that they purchased GTAV "[b]ased on advertisements and guarantees made on the product regarding 'on-line' interaction," that Defendants "did not cause any type of notice to any of the GTA V purchasers at the time of purchase that the game did not currently include 'on-line' play as clearly advertised on its product," and that what Defendants

EDCV 13-02032-VAP (SPx)
BRUCE MCMAHON et al. v. TAKE-TWO INTERACTIVE SOFTWARE, INC, et al.
MINUTE ORDER of January 29, 2014

"advertised and displayed on [their] product" thus was fraudulent.  (See Compl.
¶¶ 26, 30, 31, 33, 34, 60.)

    Nonetheless, the Court is persuaded by Defendants' argument that Plaintiffs
have failed to identify a false and fraudulent statement on the packaging of GTAV.
As Defendants assert in the Reply, contrary to Plaintiffs' assertions in the
Opposition, "nowhere does the GTAV game packaging use the word 'immediate[,]'
nor is there any specific language that suggest such gameplay was 'immediately'
available," with GTAV.  (Reply at 8 (citing Lynch Decl. Exs. A, B).)  Instead, as
Defendants have pointed out, GTAV's packaging – while prominently displaying the
phrase, "Featuring Grand Theft Auto Online" – defines "special features" of the
game as including "exclusive, unlockable, downloadable or online content, services,
or functions" and disclaims that "[a]ccess to special features may require internet
connection, may not be available to all users, and may, upon 30 days notice, be
terminated, modified, or offered under different terms."  (Lynch Decl. Exs. A, B; see
Reply at 8.)  These disclaimers clearly indicate that the online component of GTAV
is a "special feature," which "may not be available to all users."  (Lynch Decl. Exs. A,
B.)  Plaintiffs may be correct that this disclaimer exists to "address consumer
complaints for those times when the online servers might go down" (Opp'n at 8), but
the broad language on the packaging provides a clear notice that GTA Online,
despite its prominent highlighting on the packaging, may not be immediately
available, regardless of the reason for the unavailability, even from the time of the
initial release of the game.  The Court thus finds it unlikely that the public would be
deceived by Defendants' statements on the packaging, as it is improbable that "a
significant portion of the general consuming public or of targeted consumers, acting
reasonably in the circumstances, could be misled" by those statements.  See Kasky,
27 Cal. 4th at 951; Lavie, 105 Cal. App. 4th at 508; see also Davis, 691 F.3d at
1161-62 (finding that a defendant's advertising "was not likely to deceive a
reasonable consumer" because the advertising included a legible disclaimer, "[o]ther
restrictions may apply").

    Having found that Plaintiffs have failed to identify misrepresentation on the
GTAV packaging or to establish that "members of the public [were] likely to be

MINUTES FORM 11                              Initials of Deputy Clerk vp for MD
CIVIL -- GEN                    Page 13

EDCV 13-02032-VAP (SPx)
BRUCE MCMAHON et al. v. TAKE-TWO INTERACTIVE SOFTWARE, INC, et al.
MINUTE ORDER of January 29, 2014

'deceived'" by the packaging (Kasky, 27 Cal. 4th at 951), the Court finds Plaintiffs also cannot meet the actual reliance requirement.  As noted above, despite Plaintiffs' assertion in the Opposition that they relied on "the GTA V packaging [that] falsely advertised that the game would be immediately available for online [play] if it was purchased on September 17, 2013," Plaintiffs cannot show such reliance to be reasonable because the packaging makes no promise of GTA Online being "immediately available."  (See Opp'n at 5-8.)  Instead, as discussed above, the packaging gives adequate notice and disclosure that GTA Online may not be available, which Plaintiffs allege they read on the product case before purchasing GTAV.  (See Lynch Decl. Exs. A, B; Compl. ¶ 33.)  As such, the "immediate cause" of the economic loss suffered by Plaintiffs in purchasing GTAV was not Defendants' misrepresentation on the packaging.  See In re Tobacco Cases, 46 Cal. 4th at 326. Rather, it was Plaintiffs' own incorrect conclusion and conduct in (1) reading "all of the disclosures and promises made on the product case," including the disclaimer that online services "may not be available," but failing to ascertain whether GTA Online, a special feature, is available (Compl. ¶ 33; Lynch Decl. Exs. A, B); (2) assuming, despite the disclaimers and lack of confirmation, that GTA Online is immediately and definitely available (see Opp'n at 6-8); and (3) purchasing GTAV for the primary, if not sole, purpose of playing GTA Online (id.).  As Plaintiffs represent themselves to "invest[] a significant portion of their personal leisure time and their income into their passion for online videogaming" and "only enjoy playing interactively in online games" (Opp'n at 3, 6), their reliance upon Defendants' alleged misrepresentation on the packaging and their conduct in purchasing GTAV were "in the light of [their] own intelligence and information . . . manifestly unreasonable.  See Davis, 691 F.3d at 1163.

        Accordingly, as Plaintiffs cannot establish that the public is likely to be deceived or misled by the GTAV packaging or that their reliance on Defendants' statements was reasonable, Plaintiffs fails to assert a "fraudulent" UCL claim.

### (2)    "Unlawful" Prong
        The unlawful prong of the UCL prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law."  Cel-Tech

<u>Commc'ns, Inc. v. L.A. Cellular Tel. Co.</u>, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).  By proscribing "any unlawful" business practice (Cal. Bus. & Profs. Code § 17200), the UCL permits injured consumers to "borrow" violations of other laws and treat them as unfair competition that is independently actionable.  <u>Cel-Tech</u>, 20 Cal. 4th at 180.  Plaintiffs, however, must allege with particularity which state or federal statute Defendants violated.  <u>See</u> <u>Davis</u>, 691 F.3d at 1168.

Defendants argue Plaintiffs wrongly allege a UCL claim based on erroneous assertions of violations of California's Consumer Legal Remedies Act ("CLRA") and the FAL. (Mot. at 13-14; <u>see</u> Compl. ¶ 58.)  First, Defendants assert they cannot have violated the CLRA because "the CLRA does not apply to online video game platforms such as GTA Online."  (Mot. at 14 (citing <u>In re Sony</u>, 903 F. Supp. 2d at 971-72 (dismissing CLRA claims).).)  Second, Defendants assert that to the extent that Plaintiffs' "unlawful" UCL claim is based on "an alleged violation of the FAL – which is identical to its 'fraudulent' UCL claim," the FAL basis (which Defendants separately challenge) is circular and should also fail.  (<u>Id.</u>)

In the Opposition, Plaintiffs do not directly respond to Defendants' assertions regarding the CLRA and the FAL.  (<u>See</u> Opp'n at 18.)  Instead, Plaintiffs reiterate that Defendants "intentionally and unlawfully advertised false and untrue promises and guarantees about the product on its packaging."  (<u>Id.</u>)

The Court agrees with Defendants that Plaintiffs' UCL claim cannot rely on allegations of CLRA and FAL violations.  As Defendants correctly asssert, software and online services fall outside the "goods" and "services" covered by the CLRA.  <u>See</u> <u>In re Sony</u>, 903 F. Supp. 2d at 972.  Thus, Plaintiffs cannot assert a CLRA violation based on allegations arising from their purchase of GTAV and GTA Online, and such an assertion cannot be a basis for an "unlawful" UCL claim.  The Court also agrees with Defendants that Defendants' alleged FAL violation cannot be the basis of an "unlawful" UCL claim because, as discussed below, Plaintiffs' FAL claim fails, just as the "fraudulent" UCL claim cannot stand, as discussed above.  As

EDCV 13-02032-VAP (SPx)
BRUCE MCMAHON et al. v. TAKE-TWO INTERACTIVE SOFTWARE, INC, et al.
MINUTE ORDER of January 29, 2014

Plaintiffs cannot assert CLRA and FAL violations, the "unlawful" prong of the UCL claim fails.

### (3)  "Unfair" Prong

The UCL also permits a claim for a business practice that is "unfair," even if not specifically proscribed by some other law.  Korea Supply, 29 Cal. 4th 1134, 1143 (2003).  In consumer cases, however, the question of what constitutes an "unfair" business practice appears to be unsettled.  See Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 736 (9th Cir. 2007); Boschma v. Home Loan Ctr., Inc., 198 Cal. App. 4th 230, 252 (2011).  Some California appellate courts have applied the test under South Bay Chevrolet v. General Motors Acceptance Corp., 72 Cal. App. 4th 861, 886-87 (1999), which requires the Court to "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim."  See McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1473 (2007).  Others have required plaintiffs to show that a practice violates public policy as declared by "specific constitutional, statutory or regulatory provisions" or that the practice is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Bardin v. Daimlerchrysler Corp., 136 Cal. App. 4th 1255, 1260-61, 1268 (2006).

Defendants assert Plaintiffs cannot meet the "unfair" prong of the UCL claim because "[t]he Complaint contains no allegations that [Defendants'] allegedly wrongful conduct had any negative impact on Defendants' competitors . . . or, . . . that Plaintiffs were unfairly victimized in any way . . . ."  (Mot. at 15.)

Plaintiffs contend they "were unfairly victimized in a manner that is immoral, unethical, oppressive, unscrupulous and substantially injury to consumers."  (Opp'n at 18.)  They argue "[i]t is clearly oppressive when Defendants knew that the on line portion of the video game did not work but made no effort to advise the consumer at the time of the purchase."  (Id.)  They also argue "[i]t is substantially injurious to the consumer when they are not given what they are promised in the bargain," i.e., "the ability to play on line."  (Id.)

EDCV 13-02032-VAP (SPx)
BRUCE MCMAHON et al. v. TAKE-TWO INTERACTIVE SOFTWARE, INC, et al.
MINUTE ORDER of January 29, 2014

The Court finds Plaintiffs have not satisfied any of the tests for the "unfair" prong of the UCL claim.  Although Defendants could have taken further steps to notify purchasers of GTAV of the October 1, 2013 launch of GTA Online, Defendants provided disclaimers on the packaging that the online component, as a special feature, may not be available, and appears to have published numerous news releases announcing the later release date for GTA Online.  Thus, Defendants' actions – and any omissions they may have committed – were not "oppressive." Also, Defendants did not cause substantial injury to Plaintiffs by failing to deliver what they promised with GTAV.  As discussed above, although Defendants did promise the availability of GTA Online with GTAV, they never promised immediate availability.  Moreover, because GTA Online was an additional special feature, which could always be suspended or removed, its initial unavailability could not have represented a substantial injury to customers, as subjectively significant the feature may have been for Plaintiffs.  As Plaintiffs cannot show that Defendants' conduct was oppressive or substantially injurious to customers, the "unfair" prong of the UCL claim fails.

**D.   FAL Claim**

To state a claim under the FAL, a plaintiff must (1) show that he or she has standing by establishing an economic injury, which was caused by false advertising that is the gravamen of the claim, (2) plead misrepresentation with particularity by identifying actionable advertising likely to deceive and showing actual reliance on such advertising, and (3) establish entitlement to restitution or injunctive relief.  See In re Sony, 903 F. Supp. 2d at 965-70; Lavie, 105 Cal. App. 4th at 498.

As Plaintiffs' assertion of false advertising exclusively concerns Defendants' advertising on the GTAV packaging, the analysis of the FAL claim is identical to that conducted above for the "fraudulent" prong of the UCL claim.  Plaintiffs thus cannot establish any of the requirements for the FAL claim.

## V.   LEAVE TO AMEND

In their Opposition, Plaintiffs ask the Court to deny the Motion, give them leave to amend the Complaint, and file a First Amended Complaint ("FAC") – attaching a

copy of the Proposed FAC with the Opposition.  (Opp'n at 20; Declaration of Rex P. Sofonio Ex. A ("Proposed FAC").)  In the Proposed FAC, Plaintiffs assert two additional claims beyond the FAL and UCL claims: (1) breach of express warranty; and (2) breach of implied warranties of merchantability and fitness.  (See Proposed FAC at 1.)  In the Reply, Defendants argue Plaintiffs' request for a leave to amend the FAC should not be granted because the request is untimely, improperly submitted, and futile.  (Reply at 12.)

Leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  A district court can deny leave "where the amendment would be futile . . . or where the amended complaint would be subject to dismissal."  Saul v. United States, 928 F.2d 829, 843 (9th Cir. 1991).  The Court will find an amendment futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense."  Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988) (citing Baker v. Pac. Far East Lines, Inc., 451 F. Supp. 84, 89 (N.D. Cal. 1978)).

Based on the parties' arguments and the facts as pleaded in the Complaint, the Court concludes that amendment of Plaintiffs' existing claims would be futile.  See Miller, 845 F.2d at 214.  Plaintiffs' UCL and FAL claims directly concern the content of GTAV's packaging; the Court does not find an amended complaint on these two claims will lead to valid claims, as neither claim can be sufficiently alleged based on the packaging.  The Court's examination of the Proposed FAC confirms this finding.  (See Proposed FAC ¶¶ 63-76.)

As for the two additional claims Plaintiffs seek to assert in a new FAC – breach of express warranty, and breach of implied warranties of merchantability and fitness – Defendants contend the two new claims are also futile "because the 'End-User License Agreement' which the GTAV game package provides to consumers via a URL and the 'Limited Warranty' which is contained within the GTAV game package expressly and unequivocally disclaims all warranties."  (Reply Declaration of Michael C. Lynch ("Reply Lynch Decl.") ¶ 9, Exs. A-C; see also Proposed FAC ¶¶ 77-92.)  Defendants also assert other courts have dismissed warranty claims based on

EDCV 13-02032-VAP (SPx)
BRUCE MCMAHON et al. v. TAKE-TWO INTERACTIVE SOFTWARE, INC, et al.
MINUTE ORDER of January 29, 2014

similar warranty language in product packaging."  (Reply at 10.)  See, e.g., In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig., 758 F. Supp. 2d 1077, 1091 (S.D. Cal. 2010).  The Court is persuaded by Defendants' argument.  The Court also finds the two warranty claims, just like the UCL and FAL claims, are grounded in the assertion that the GTAV packaging promised that GTA Online would be immediately available, which the Court, as discussed above, does not find to be supported by the actual text of the packaging. (See Proposed FAC ¶¶ 77-92.)  The Court thus holds that amendment of the Complaint to include the two warranty claims would also be futile.

The Court thus concludes that there is no set of facts that would entitle Plaintiffs to relief.  Accordingly, the Court dismisses Plaintiffs' Complaint without leave to amend.

## VI.  CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss the Complaint WITH PREJUDICE (Doc. No. 8).  The Court GRANTS Defendants' Request for Judicial Notice (Doc. No. 9) as to Exhibits A and B of the Lynch Declaration and DENIES the Request for Judicial Notice as to Exhibits C through Q of the Lynch Declaration.

**IT IS SO ORDERED.**